IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

NEW YORK STATE ELECTRIC & GAS
CORPORATION,

                Plaintiff,

                                Civ. Action No.
                                3:03-CV-0438 (DEP)

   vs.

FIRSTENERGY CORPORATION,

                Defendant.
_____

APPEARANCES:_____OF COUNSEL:

FOR PLAINTIFF:

DICKSTEIN SHAPIRO MORIN      DAVID L. ELKIND, ESQ.
  & OSHINSKY, LLP           ANDREW C. COOPER, ESQ.
2101 L Street NW             KEISHA A. GARY, ESQ.
Washington, D.C.  20037

HINMAN, HOWARD LAW FIRM    JAMES S. GLEASON, ESQ.
P.O. Box 5250
80 Exchange Street
700 Security Mutual Building
Binghamton, NY 13902-5250

FOR DEFENDANT:

SAUL EWING LLP               JOHN F. STOVIAK, ESQ.
1500 Market Street, 38th Floor    JANE KOZINSKI, ESQ.
Philadelphia, PA 19102

COSTELLO, COONEY LAW FIRM          PAUL G. FERRARA, ESQ.
Salina Place
205 South Salina Street
4th Floor
Syracuse, NY 13202-1307

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

                   DECISION AND ORDER

      Plaintiff New York State Electric & Gas Corporation ("NYSEG") has

commenced this action seeking to recover expenses incurred to

remediate twenty-four hazardous waste sites formerly associated with

manufactured gas plant ("MGP") operations of NYSEG and its

predecessor utility companies.  While plaintiff's complaint, as amended in

October of 2004, at one time asserted a combination of federal and state

law causes of action including, *inter alia,* under the Comprehensive

Environmental Response, Compensation and Liability Act of 1980

("CERCLA"), 42 U.S.C. 9601 *et seq.,* its claims have been materially

reshaped as a result of ongoing evolution within the area of CERCLA

jurisprudence.  With this development, coupled with rejection by the court

of plaintiff's contribution cause of action under section 113(f) of CERCLA,

and dismissal of plaintiff's New York Navigation Law and common law

indemnity counts, on stipulation of the parties, all that now remains is a

state law claim by NYSEG for contribution.

Currently pending before the court are cross-motions of the parties. For its part, plaintiff requests leave to file an otherwise untimely demand for a trial by jury.  Defendant FirstEnergy Corporation ("FirstEnergy"), in turn, seeks the entry of summary judgment dismissing plaintiff's remaining cause of action on a variety of bases.

FirstEnergy's summary judgment motion calls upon the court, in the first instance, to determine whether New York's statutory contribution regime can be used by a party as a surrogate for seeking contribution under CERCLA from one or more others for a proportionate share of costs incurred in remediating a hazardous waste site, in the wake of developing case law severely restricting the right to recover such relief under CERCLA.  Because I find that while the predicates for prevailing under New York's contribution statute have been met in this case, CERCLA preempts the availability of state law contribution claims in such instances, I will grant FirstEnergy's motion dismissing NYSEG's remaining cause of action, as a matter of law, and will deny the balance of the parties' cross-motions in light of that determination.

I.      BACKGROUND

NYSEG's claims in this action arise from its ownership of twenty-four parcels of real property located throughout Upstate New York, and at one

time utilized in connection with the production and/or storage of manufactured gas.  The MGP operations conducted at those locations were typical of those carried out by public utilities during the 1800's and first portion of the twentieth century to produce gas, manufactured principally through processes employing coal, coal byproducts, and oil as raw materials, for commercial and residential usage.  By their nature, MGP facilities typically generated significant quantities of contaminating byproducts, including coal tars and oils, containing volatile organic compounds ("VOCs"), polycyclic aromatic hydrocarbons ("PAHs"), and heavy metals, which byproducts were typically stored on-site and often released into the soil and groundwater at and near the MGP sites.

By the time of commencement of this action, NYSEG had paid more than twenty-seven million dollars to address contamination at the various MGP sites in issue, with the expectation that the expenditure of substantial, additional amounts would be required in order to complete the clean-up process.  Those remedial efforts were conducted pursuant to administrative consent orders entered into with the New York State Department of Environmental Conservation ("NYSDEC") with respect to the twenty-four and various other former MGP sites.[1]

---

[1]     There is evidence in the record suggesting that NYSEG's entry into one or more of those consent orders was motivated, at least in part, by an agreement on

Plaintiff now seeks to recover contribution from FirstEnergy for portions of its remediation costs.  The basis for NYSEG's contribution claim is the contention that FirstEnergy is the corporate successor to Associated Gas & Electric Company ("AGECO"), a corporation formed in 1906 and which, from the time of its creation until 1946, owned all of the stock of NYSEG, allegedly exercising considerable control over its operations.  Plaintiff asserts that for purposes of liability under CERCLA, AGECO was both an owner and an operator of the MGP facilities in issue during the relevant period.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on April 8, 2003.  Dkt. No. 1.  In its initial complaint, NYSEG sought a determination of FirstEnergy's liability for contribution under section 113(f) and interposed a pendent state law claim based upon N.Y. Navigation Law § 181(1), addressing the clean up and removal of petroleum discharges.  Following some preliminary discovery, the parties cross-moved for summary judgment.  In its motion, NYSEG requested a finding as a matter of law that FirstEnergy is liable under CERCLA as a potentially responsible party ("PRP") for the release of hazardous substances at the twenty-four sites in issue, at least for the

---

the part of the NYSDEC to allow plaintiff to combust coal tar at two of its facilities.  *See* Defendant's Exhibits (Dkt. No. 119) Exh. 24.

period covering between 1922 and 1940, in essence seeking an order piercing the corporate veil between NYSEG and its predecessor corporations and urging that FirstEnergy's forerunner, AGECO, should be held accountable as a PRP for those releases directly as an operator, and derivatively as both an owner and an operator.  FirstEnergy, in turn, moved seeking a determination that there is no basis to pierce the corporate veil between NYSEG and AGECO for the periods between 1906 and 1922, and from 1940 until 1946, and further that there is no basis to pierce the corporate veil as between AGECO and the five AGECO affiliates owning sixteen of the twenty-four sites in issue prior to NYSEG's association with those sites.  Those motions resulted in the issuance on October 28, 2004 of an order granting FirstEnergy's motion dismissing plaintiff's claims relating to the period between July of 1942 and the end of 1946, but otherwise denying the parties' cross-motions based upon the finding of the existence of triable issues of material fact.  *See* Dkt. No. 66.

On October 6, 2004, NYSEG filed an amended complaint in the action.  Dkt. No. 61.  In that new pleading, plaintiff asserted six separate causes of action, including claims 1) for contribution under section 113(f)(1) of CERCLA; 2) seeking a declaratory judgment that defendant is liable for contribution under section 113(f)(1); 3) under N.Y. Navigation

Law § 181(1), alleging discharges of petroleum giving rise to liability under that provision; 4) for contribution under N.Y. Civil Practice Law and Rules § 1401; 5) for indemnification under New York common law; and 6) for declaratory judgment under N.Y. Civil Practice Law and Rules § 3001. Plaintiff's claims arising out of section 113(f) of CERCLA were subsequently dismissed by order entered on June 27, 2005, granting defendant summary judgment with regard to those causes of action, Dkt. No. 90, and NYSEG has since voluntarily relinquished its New York Navigation Law and common law indemnity claims, based upon a stipulation of the parties approved by the court on March 12, 2007.[2]  Dkt. No. 128.

On February 6, 2007, following the completion of discovery, NYSEG moved seeking leave to file a late jury demand.[3]  Dkt. No. 117. FirstEnergy thereafter countered with a cross-motion seeking the entry of summary judgment dismissing plaintiff's remaining claims on a variety of

---

[2]     Although this court's jurisdiction in this case was originally predicated principally upon 28 U.S.C. § 1331, given the presence of claims under CERCLA, the elimination of those claims does not divest the court of jurisdiction since plaintiff's complaint, as amended, alleges the existence of diversity jurisdiction pursuant to 28 U.S.C. § 1332.

[3]     By agreement of the parties, and with the court's approval, for the moment the issues to be litigated in this action are limited to eight representative MGP sites out of the twenty-four at issue, jointly selected by the parties, and therefore discovery, insofar as specific remediation costs are concerned, has been limited to issues directly impacting those eight sites.

bases, arguing that 1) plaintiff's section 1401 claims are preempted, and in any event cannot rest upon joint and several liability resulting from a federal statute such as CERCLA; 2) plaintiff's section 1401 claim is legally deficient, since NYSEG has not suffered the entry of judgment against it or otherwise been exposed to tort liability for property damage; 3) NYSEG cannot demonstrate the requisite injury entitling it to seek contribution, since it has recovered its response costs through increased utility rates charged to its customers, with approval of the New York State Public Service Commission ("PSC"); and 4) plaintiff is precluded from pursuing its claims both as a result of a 1945 bar order entered in the bankruptcy of AGECO and a covenant not to sue allegedly entered into, also in 1945, between NYSEG and AGECO's then-immediate parent company, NYPANJ Utilities Company.   Dkt. No. 119.  The parties' cross-motions, which have been fully briefed and orally argued, are now ripe for determination and are before me on consent of the parties pursuant to 28 U.S.C. § 636(c).

III.   DISCUSSION

A.   Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted

when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004). A fact is "material", for purposes of this inquiry, if "it might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2505). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

When summary judgment is sought, the moving party bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Sec. Ins.*, 391 F.3d at 83. In

the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict.").

    B.   <u>NY CPLR § 1401 Cause of Action</u>

       1.   <u>Section 1401 Generally</u>

At common law, the "rules of contribution were extremely rigid, precluding apportionment of liability among tort-feasors."  *Bd. of Educ. of the Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley,* 71 N.Y.2d 21, 26, 517 N.E.2d 1360, 1363, 523 N.Y.S.2d 475, 477 (1987);

*see also D'Ambrosio v. City of New York,* 55 N.Y.2d 454, 460, 435 N.E.2d 366, 368, 450 N.Y.S.2d 149, 151 (1982).  Most jurisdictions, however, including New York, have effectively ameliorated the harsh affects of this common law rule, either judicially or legislatively.  *See Dole v. Dow Chem. Co.,* 30 N.Y.2d 143, 148-49, 282 N.E.2d 288, 292, 331 N.Y.S.2d 382, 387 (1972); *Northwest Airlines, Inc. v. Transp. Workers Union of Am.,* 451 U.S. 77, 87-88, 101 S. Ct. 1571, 1578-79 (1981); Vincent C. Alexander, Practice Commentary, § C1401:1, N.Y. C.P.L.R. 1401 (McKinney 1997); *see also PMC, Inc. v. Sherwin-Williams Co.,* 151 F.3d 610, 618 (7th Cir. 1998) (recognizing that both section 113(f)(1) of CERCLA and the Illinois contribution statute modify common law, under which "courts traditionally did not consider the claim of one joint tortfeasor for a sharing of the costs of liability by the other one worthy of *any* judicial time and attention, except in cases in which the second tortfeasor had agreed (or was treated as having agreed) to indemnify the first.") (emphasis in original) (citations omitted).

In New York, relaxation of the common law rule dates back at least to 1928, with enactment of section 211-a of the Civil Practice Act.  *See D'Ambrosio,* 55 N.Y.2d at 460, 435 N.E.2d at 368, 450 N.Y.S.2d at 151. Section 211-a, however, permitted contribution claims to be asserted only

among joint tortfeasors which a particular plaintiff chose to sue; there was authority under that section permitting a named defendant to bring another potentially liable party into the suit, or to commence a separate action to recover from another, un-sued tortfeasor. *Id.*

Easing of the rigid common rule in New York continued, and was markedly advanced in 1972 by the Court of Appeals' decision in *Dole.* There, in addition to rejecting the "all or nothing" approach resulting from application of section 211-a and the law of implied indemnification, in favor of apportionment of liability based upon relative degrees of fault, the court recognized the right of a tortfeasor to seek contribution, also referred to as "partial indemnity", from another tortfeasor regardless of whether the second tortfeasor had been made a party to the action brought by the injured party. *Dole*, 30 N.Y.2d at 147-49, 282 N.E.2d at 290-92, 331 N.Y.S.2d at 386-88; *see Bd. of Educ.*, 71 N.Y.2d at 27, 517 N.E.2d at 1363-64, 523 N.Y.S.2d at 478; *D'Ambrosio*, 55 N.Y.2d at 460, 435 N.E.2d at 368, 450 N.Y.S.2d at 151.

Section 1401 of the N.Y. Civil Practice Law and Rules, pursuant to which NYSEG asserts the remaining claim in this action, in essence represents a codification of *Dole. Bd. of Educ.,* 71 N.Y.2d at 27-28, 517 N.E.2d at 1364, 523 N.Y.S.2d at 478.  Under section 1401, with

exceptions not relevant in this case, "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought."  N.Y. C.P.L.R. 1401 (McKinney 2007).  The relevant statutory provisions also permit the commencement of a separate action seeking contribution, as has occurred in this action. N.Y. C.P.L.R. 1403 (McKinney 2007); *see Stein v. Whitehead*, 40 A.D.2d 89, 91-92, 337 N.Y.S.2d 821, 824-25 (2d Dep't 1972).

The New York law of contribution is predicated upon the principle "that one who is compelled to pay more than his aliquot share of an obligation upon which several persons are equally liable is entitled to contribution from the others to obtain from them payment of their respective shares."  *Green Bus Lines, Inc. v. Consol. Mut. Ins. Co.,* 74 A.D.2d 136, 147-48, 426 N.Y.S.2d 981, 989 (2d Dep't 1980) (citing *Asylum of St. Vincent de Paul v. McGuire,* 239 N.Y. 375, 146 N.E. 632 (1925)).  It therefore follows that "[t]he amount of contribution to which a person is entitled shall be the excess paid by him over and above his equitable share of the judgment recovered by the injured party; but no person shall be required to contribute an amount greater than his

equitable share . . . ."  N.Y. C.P.L.R. 1402 (McKinney 2007).

### 2.   Underlying Basis For Joint Liability

The essence of a claim for contribution under section 1401 is that two or more parties are exposed to tort liability in connection with the same harm.  *Bd. of Educ.,* 71 N.Y.2d at 27, 517 N.E.2d at 1364, 523 N.Y.S.2d at 478.  As the Court of Appeals has noted, "[t]he legislative history [of section 1401] makes clear . . .  that the statute applies not only to joint tort-feasors, but also to concurrent, successive, independent, alternative, and even intentional tort-feasors."  *Id.* (citations omitted).  The fact that two tortfeasors may have contributed at different times to the same injury, as is alleged to be the case in this instance, thus does not preclude a finding that they were responsible for the same injury, provided that their conduct contributed to the same injury; the contribution rule of section 1401 applies not only to concurrent joint tortfeasors, but also to successive and even independent tortfeasors.[4]  Vincent C. Alexander, Practice Commentary, §§ C1401:2, C1401:5, N.Y. C.P.L.R. 1401 (McKinney 1997).

---

[4]     Cases involving successive tortfeasors, however, present unique circumstances requiring careful analysis.  In some such situations, while a successive tortfeasor may be liable in contribution to the original tortfeasor, the converse is not necessary true.  *See Glaser v. M. Fortunoff of Westbury Corp.,* 71 N.Y.2d 643, 524 N.E.2d 413, 529 N.Y.S.2d 59 (1988); *see also* Vincent C. Alexander, Practice Commentary, § C1401:5, N.Y. C.P.L.R. 1401 (McKinney 1997).

It should be noted that to bring a section 1401 contribution claim, there is no requirement that the party from whom contribution is sought be potentially liable under the same theory as that asserted against the party seeking contribution.  Alexander, *supra* p. 14, at § C1401:2.  While undeniably there must be some form of tort liability which could be invoked, "'[i]t is the fact of liability to the same person for the same harm rather than the legal theory upon which *tort liability* is based which controls.'"  *Bd. of Educ.,* 71 N.Y.2d at 28, 517, N.E.2d at 1364, 523 N.Y.S.2d at 478 (quoting 12th Ann. Report of N.Y. Jud. Conf. on CPLR, 1974 N.Y. Sess. Law (McKinney) (emphasis in original)).

Despite this rather expansive view of the New York Court of Appeals concerning liability for contribution under section 1401, FirstEnergy asks that the court recognize an exception not addressed by that court.  In support of its motion, FirstEnergy asserts that a claim for contribution under section 1401 must depend upon state law for its underlying theory of liability.  Consequently, it argues, to the extent NYSEG may be relying upon CERCLA as a basis to invoke liability, as a federal statute it cannot give rise to a claim for contribution under that provision.

To be sure, there are cases in which courts have seemingly recognized a categorical rule that the source of the liability upon which a

section 1401 contribution claim is grounded must be state law.  *See, e.g.,*

*W.R. Grace & Co. – Conn. v. Zotos Int'l,* No. 98-CV-838S(f), 2005 WL

1076117, at *9 (W.D.N.Y. May 3, 2005) ("[I]n general, the source of a

state law contribution claim must be an obligation imposed by state, rather

than federal law.") (citations omitted); *LNC Inv. Inc. v. First Fid. Bank, Nat'l*

*Assoc.,* 935 F. Supp. 1333, 1349 (S.D.N.Y. 1996) ("[t]he source of a right

of contribution under state law must be an obligation imposed by state

law."); *see also Lehman Bros., Inc. v. Wu,* 294 F. Supp. 2d 504, 505 n.1

(S.D.N.Y. 2003) (citations omitted).  There is nothing in section 1401 itself,

however, which imposes such a limitation; that section merely requires

that in order to be eligible for contribution, a party be exposed, along with

one or more others, to liability for damages for the same injury.  N.Y.

C.P.L.R. 1401; *see Schauer v. Joyce*, 54 N.Y.2d 1, 5-7, 429 N.E.2d 83,

84-85, 444 N.Y.S.2d 564, 565-66 (1981).

That the basis for liability upon which a contribution claim under

section 1401 is predicated can arise from federal law is confirmed by the

court's decision in *Too, Inc. v. Kohl's Department Stores, Inc.,* 213 F.R.D.

138 (S.D.N.Y. 2003).  There, the court endorsed the use of section 1401

by a party to recover contribution for violation of rights under a federal

statute, in that case from a contributory infringer subject to liability under

the Copyright Act, Title 17 U.S.C. § 1 *et seq. Id.* at 141-42.

It is true that state law provisions governing contribution have been found not to apply in certain instances involving federal statutory schemes providing the underlying basis for liability; those cases, however, typically have implicated federal laws encompassing within them wholly integrated remedial provisions. *See, e.g. Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 144 (2d Cir. 1999) (finding contribution claims under New York law preempted in light of the Fair Labor Standards Act's remedial scheme, characterized as "sufficiently comprehensive as to preempt state law in this respect."). In a similar vein certain courts, again based upon the analysis of the particular remedial schemes specified, have refused to engraft a federal common law of contribution into the certain federal statutory regimes. *See, e.g.*, *Northwest Airlines, Inc.,* 451 U.S. at 93-94, 101 S. Ct. at 1581-82 (declining to recognize the implied right of contribution under federal common law in case involving Equal Pay Act and Title VII of the Civil Rights Act of 1964, as amended); *see also Johnston v. Smith*, No. 1:95-CV-595-RCF, 1997 WL 584349, at *1 (N.D. Ga. June 10, 1997) ("'[W]hether contribution is available in connection with a federal statutory scheme is a question governed solely by federal law.'") (quoting *Gilmore v. List & Clark Constr. Co.*, 866 F. Supp. 1310,

1313 n.7 (D. Kan. 1994)).

In my view, those cases are better understood as presenting questions of conflict preemption, rather than standing for the proposition that use of a state rule of contribution is never appropriate when the underlying liability arises under federal law.[5]  Finding nothing in section 1401 or applicable case law under that section which would, in and of itself, preclude use of that section to recover contribution based upon exposure to liability under federal law, I reject FirstEnergy's assertion that NYSEG cannot seek recovery against it under that section for contribution based upon potential liability imposed by CERCLA, if that indeed is the source of the liability in question.[6]

### 3.   Plaintiff's Entitlement To Contribution

Under New York's contribution scheme, a party is entitled to recover the excess paid by that party "over and above his equitable share of the

---

[5]      The question of whether a contribution claim brought under a state law such as section 1401 is preempted as conflicting with a federal statute will be addressed further on in this opinion. *See infra* Part III.B.4.

[6]      Central to NYSEG's state law contribution claim is the requirement that both it and FirstEnergy have been exposed to liability for the same injury.  N.Y. C.P.L.R. 1401; *Bd. of Educ.,* 71 N.Y.2d at 28, 517 N.E.2d at 1364, 523 N.Y.S.2d at 478.  NYSEG's papers are conspicuously vague regarding the source of the liability to which it and FirstEnergy have been exposed and, when pressed on this question during oral argument, its counsel was unable to articulate a specific basis for that liability.  Indeed, in its papers plaintiff has argued simply that "there is a clear theory of liability against FirstEnergy – it is the same liability and obligations [sic] that NYSEG faces under NYSDEC's Orders on Consent."  *See* Plaintiff's Memorandum (Dkt. No. 124) at 9.

judgment recovered by the injured party."  N.Y. C.P.L.R. 1402.  To invoke

the right of contribution, a party generally must resolve an underlying,

common liability toward a third party.  *See* Restatement (Second) of Torts

§ 886A(2) (1979) ("The right of contribution exists only in favor of a

tortfeasor who has discharged the entire claim for the harm by paying

more of his equitable share of the common liability . . . .");  Restatement

(Third) of Torts § 23 cmt. b (2000) ("A person seeking contribution must

extinguish the liability of the person against whom contribution is sought

for that portion of liability, either by settlement with the plaintiff or by

satisfaction of judgment.");  Black's Law Dictionary 352-53 (8th ed. 2004)

(the principle of "contribution," provides for a "tortfeasor's right to collect

from others responsible for the same tort after the tortfeasor has paid

more than his or her proportionate share, the shares being determined as

a percentage of fault.").  As section 1401 itself intimates, and section 1402

confirms, New York's statutory contribution scheme requires some form of

compulsion; that is, the party seeking contribution must have been

compelled in some way, such as through the entry of a judgment, to make

the payment against which contribution is sought.  *See Major v.

Astrazeneca, Inc.,* Nos. 5:01-CV-618 (Lead) (FJS/GJD), 5:00-CV-1736

(Member) (FJS/GJD), 2006 WL 2640622, at *25 (N.D.N.Y. Sept. 13, 2006)

(rejecting contribution claim under section 1401 based upon lack of evidence of recovery of a judgment against the plaintiffs); *Rochester Gas & Elec. v. GPU, Inc.,* No. 00-CV-6369, Dkt. No. 198, at 5-6 (W.D.N.Y. Sept. 25, 2006); *see also Alside, Inc. v. Spancerte Northeast, Inc.,* 84 A.D.2d 616, 617, 444 N.Y.S.2d 241, 242 (3d Dep't 1981) (dismissing claim for contribution as premature when no judgment had been entered yet against the claimant in separate suit potentially exposing it to joint and several liability, nor had any payment made in connection with the claim).

    In this instance, no judgment has been entered requiring NYSEG to pay more than its fair share of cleanup costs incurred at the twenty-four sites in question.  It has, however, been the subject of administrative orders issued by the NYSDEC.  Article 71 of the N.Y. Environmental Conservation Law and the N.Y. Administrative Procedure Act empower the NYSDEC to issue orders on consent.  *See also* St. Hilaire Decl. (Dkt. No. 124) Exh. D.  Such orders, though consensual, are the functional equivalents of final agency orders, and the expenditure of funds pursuant to such an order can represent the satisfaction of a tort-like liability for environmental damage to property.  *See Consol. Edison Co. of New York, Inc. v. UGI Util., Inc.,* 423 F.3d 90, 101 (2d Cir. 2005).  It is this factor which readily distinguishes the circumstances now presented from those

involved in *Rochester Gas & Electric v. GPU, Inc.,* in which the court found the existence of no cognizable contribution claim under section 1401 inuring to the benefit of a plaintiff who had entered into a voluntary agreement with the NYSDEC to clean up the hazardous waste sites in dispute.  *See* No. 00-CV-6369, Dkt. No. 198 at pp. 5-6.

While NYSEG engaged in remediation efforts at the MGP sites in suit out of compulsion resulting from administrative orders issued by the NYSDEC, its ability to recover contribution of some of those expenses from other PRPs must be premised upon the extinguishment of liability, shared with FirstEnergy for the same injuries.  Although the questions of whether they both bear responsibility for environmental injury to the MGP sites, and if so in what relative proportions, remain as triable issues, a reasonable factfinder could conclude that both NYSEG and FirstEnergy are liable under CERCLA, the N.Y. Environmental Conservation Law, or some other legal theory, for damage caused by releases of hazardous substances, though occurring during different periods, at the twenty-four MGP sites.   Recalling that the lynchpin of New York's contribution provision is common liability for the same injury, regardless of whether the two tortfeasors' actions were contemporaneous, or instead successive, and even independent, *see Bd. of Educ.*, 71 N.Y.2d at 27, 517 N.E.2d at

21

1364, 523 N.Y.S.2d at 478, the allegations that plaintiff and defendant's predecessors caused injury to the same property provide a basis for NYSEG to seek contribution under section 1401.

FirstEnergy has argued that contribution is not available since plaintiff did not extinguish its liability under CERCLA in consenting to the entry of the subject administrative orders.  Unquestionably, the EPA is authorized to delegate its responsibilities under CERCLA to state agencies, and to engage in cooperation agreements with those agencies such as the NYSDEC to permit the resolution of CERCLA liability.  *See Zotos Int'l,* 2005 WL 1076117, at *3-5.  As defendant argues, however, there is nothing in the record to suggest that the NYSDEC acted in this case pursuant to such delegated authority.  Moreover, having reviewed carefully the consent orders at issue, I can find no basis to conclude that the orders resolve plaintiff's liability under CERCLA.[7]  Yet, this fact too is legally insignificant, since the theory of liability which a party could assert against the two tortfeasors having allegedly caused injury to the same property need not be common to both parties.  Alexander, *supra* p. 14, at

---

[7]     Indeed, had the administrative consent orders effectively settled NYSEG's liability under CERCLA, it could have asserted its entitlement to seek contribution under 42 U.S.C. § 9613(f)(3)(B), a measure which it has not taken. *Consol. Edison*, 423 F.3d at 95-96; *Zotos Int'l,* 2005 WL 1076117, at *7.

§ C1401:2.  The fact that NYSEG's liability under the orders arose under a state environmental law, whereas that of FirstEnergy may be predicated either upon CERCLA or under state statutory or common law, is not determinative.

In sum, since a reasonable factfinder could conclude that both NYSEG and FirstEnergy bear liability for environmental damage caused to the twenty-four sites in question, and through the issuance of administrative orders by the NYSDEC NYSEG has been exposed to liability for that damage, it has satisfied the prerequisites for seeking contribution form FirstEnergy under section 1401.

### 4.   Preemption

Even if NYSEG were able to make the showings necessary to recover contribution under section 1401, FirstEnergy argues, any such claim would be preempted.   NYSEG counters, pointing to express language contained within CERCLA manifesting congressional intent that state laws addressing environmental injury, which are not consistent with federal law, are not subject to preemption.

In *Bedford Affiliates v. Sills,* the Second Circuit, focusing upon the Superfund Amendments and Reauthorization Act of 1986 ("SARA"), Pub. L. No. 99-499, 100 Stat. 1613 (1986), concluded that by crafting a

comprehensive statutory settlement scheme intended to foster the resolution of environmental claims, Congress manifested its intention that state laws which would undermine the CERCLA settlement architecture should not apply, stating broadly that "CERCLA preempts the state law remedies of restitution and indemnification."  156 F.3d 416, 427 (2d Cir. 1998).  That portion of the Second Circuit's decision in *Bedford Affiliates* has prompted some courts, including at least one within this district, to find that contribution claims asserted under section 1401 in situations such as that now presented are preempted by CERCLA.  *See Major,* 2006 WL 2640622, at *25 ("CERCLA's contribution provisions preempt state-law claims seeking contribution for response costs.") (citations omitted); *see also Rochester Gas & Elec. v. GPU, Inc.,* No. 00-CV-6369, Dkt. No. 37 at pp. 7-8 (W.D.N.Y. July 17, 2001) (dismissing, without prejudice, plaintiff's state law for contribution on the grounds of CERCLA preemption).

FirstEnergy's preemption argument is bottomed upon the Supremacy Clause, memorialized in Article VI of the United States Constitution, which declares that "[t]his Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land."  U.S. Const. art. VI, cl.2.  Under well-established Supreme Court precedent, the

Supremacy Clause "invalidates state laws that 'interfere with, or are contrary to,' federal law." *Hillsborough County v. Automated Med. Labs., Inc.,* 471 U.S. 707, 712-13, 105 S. Ct. 2371, 2375 (1985) (quoting *Gibbons v. Ogden,* 22 U.S. 1 (1824)).

Under the Supremacy Clause, preemption can work to override the effectiveness of local laws in three distinct ways. *See Hillsborough County,* 471 U.S. at 713, 105 S. Ct. at 2375; *Bedford Affiliates,* 156 F.3d at 426 (citing, *inter alia, Hillsborough County,* 471 U.S. at 713, 105 S. Ct. at 2375*).* The most comprehensive form of preemption results when Congress has expressly "declare[d] its intention to preclude state regulation in a given area." *Bedford Affiliates,* 156 F.3d at 426. Preemption may also be found, even in the absence of language expressly declaring an intention to preempt state law, where a "scheme of federal regulation" implicitly signals congressional intent to occupy an entire field, and it "is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation." *Hillsborough County*, 471 U.S. at 713, 105 S. Ct. at 2375 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S. Ct. 1146, 1152 (1947)). A third, more benign, form of preemption results when a state law is effectively "nullified to the extent that it actually conflicts with federal law."

*Id.* This species, often referred to as "conflict preemption," is implicated either when "'compliance with both federal and state regulations is a physical impossibility,'" or in the event the state law "'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142-43, 83 S. Ct. 1210, 1217-18 (1963) and *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399, 404 (1941)).

The Second Circuit analyzed these preemption precepts, in the context of a CERCLA claim, in *Bedford Affiliates*. There, a landowner sought recovery of all or some of its costs of remediating the hazardous waste site in issue from its tenants at the facility, asserting causes of action under sections 107(a) and 113(f) of CERCLA, as well as state law restitution and indemnification claims. *Bedford Affiliates*, 156 F.3d at 420-22. The Second Circuit initially held that the plaintiff landowner could not pursue a cost recovery claim under section 107, in light of its status as a "potentially responsible person," and that its remedy under federal law was therefore limited to seeking contribution under section 113 of CERCLA. *Id.* at 423-25.

The Second Circuit then addressed the viability of the landowner's pendent state law claims. *Bedford Affiliates,* 156 F.3d at 425-26. The

court swiftly discounted the existence of express preemption, noting that CERCLA nowhere expresses an intent on the part of Congress to preempt state laws.  *Id.* at 426.  The court next held that there is no field preemption of state regulation by CERCLA, concluding that "it was not part of the legislative purpose that CERCLA be a comprehensive regulatory scheme occupying the entire field of hazardous wastes, nor does CERCLA prevent the states from enacting laws to supplement federal measures relating to the cleanup of such wastes."  *Id.* at 426-27.

As a last measure, the *Bedford Affiliates* court examined section 113 of CERCLA to discern whether an actual conflict exists between that provision and the landowner's state law claims.  156 F.3d at 427. Examining the indicia of Congressional intent associated with enactment of section 113, the Second Circuit determined that there was an actual conflict, and that the landowner's state law claims were therefore preempted by CERCLA.  *Id.*  The court began its actual conflict analysis by noting that section 113 is designed to expedite "resolution of environmental claims" by barring "potentially responsible parties" who decide not to settle from "seeking contribution from the settling parties . . ." *Id.*  The court reasoned that should a state law provision, asserted in addition to a section 113 claim, allow a non-settling party to seek

27

contribution from settling parties, it would "bypass [CERCLA's] carefully crafted settlement system, [thus] creating an actual conflict . . . between CERCLA and state [law]." *Id.*  The court additionally expressed concern that allowing the plaintiff to pursue state law claims along with a claim for contribution under section 113 presented the threat of double recovery. *Id.*

The pivotal inquiry in this case is whether the plaintiff's maintenance of a section 1401 contribution claim is precluded by conflict preemption. Not every pendent state law claim brought in the context of a CERCLA proceeding is subject to conflict preemption.  Indeed, several courts, pointing principally to the savings clauses contained within CERCLA,[8] have recognized the continued vitality of state law-based claims provided that they are neither duplicative of nor in conflict with CERCLA.  *See Zotos Int'l,* 2005 WL 1076117, at *11 (collecting cases); *see also Se. Tex. Envtl., L.L.C. v. BP Amoco Chem. Co.*, 329 F. Supp. 2d 853, 868 (S.D. Tex. 2004) ("In this case the Court concludes that CERCLA [section] 113(f)(1) preserves a PRP's right to pursue state-law contribution

---

[8]      CERCLA's broad savings clause provides that "nothing in CERCLA 'shall affect or modify in any way the obligations or liabilities of any person under other Federal or State law, including common law, with respect to releases of hazardous substances or other pollutants or contaminants.'"  *PMC, Inc.*, 151 F.3d at 617 (quoting 42 U.S.C. § 9652(d)).

claims."); *Volunteers of Am. of Western N.Y. v. Heinrich,* 90 F. Supp. 2d 252, 257-58 (W.D.N.Y. 2000) (finding no preemption of state law contribution claim when damages sought are not available under CERCLA).  Giving recognition to that express license, courts have permitted plaintiffs seeking cost recovery under section 107 of CERCLA to invoke a variety of state common law claims to recover damages not potentially awardable under CERCLA.  *See, e.g., New York v. Ametek, Inc.,* No. 05 CIV. 2186 SCR, 2007 WL 442168, at *1-2 (S.D.N.Y. Jan. 18, 2007) (finding no preemption of state law claims for restitution and public nuisance); *New York v. Hickey's Carting, Inc.,* 380 F. Supp. 2d 108, 120-21 (E.D.N.Y. 2005) (rejecting defendants argument of conflict preemption relating to state common law claims for restitution, subrogration and implied indemnity); *see also New York v. Moulds Holding Corp.,* 196 F. Supp. 2d 210, 219-20 (N.D.N.Y. 2002) (finding that in section 107 cost recovery action, plaintiff's nuisance claim was not subject to conflict preemption).

This case presents a very different situation from the circumstances involved in such cases as *Ametek* and *Hickey's Carting.*  As the Second Circuit has noted, CERCLA contains a carefully crafted architecture for asserting claims of contribution.  *Bedford Affiliates,* 156 F.3d at 427.

Under the law of this circuit, as presently constituted, a PRP who has been sued in a civil action may claim contribution from other PRPs under section 113(f)(1).  Additionally, a PRP that has resolved its liability under CERCLA through administrative or judicially approved settlement may sue for contribution under section 113(f)(3)(B).  Under section 107(a), as construed by the Second Circuit in *Consolidated Edison,* a party voluntarily cleaning a site but not yet sued may seek cost recovery from other PRPs, subject to the right for the PRP to counterclaim under section 113(f) for contribution.[9,10]  423 F.3d at 100; *see also Zotos Int'l,* 2005 WL 1076117, at *10.  Because resort to a contribution claim under section 1401 would potentially undermine this scheme and permit the recovery of duplicate damages, or contribution where none is available under CERCLA, the contribution claims under that statute are precluded by conflict of preemption.  *In re The Duplan Corp.,* 212 F.3d 144, 150 n.7 (2d Cir. 2000) ("CERCLA preempts the restitution and contribution claims.")

---

[9]     On April 23, 2007 the United States Supreme Court heard argument in a case in which it has been asked to resolve the question of whether a PRP, not otherwise eligible to sue for contribution under section 113(f) of CERCLA, may nonetheless bring an action against another PRP for cost recovery under section 107(a).  *United States v. Atlantic Research Corp.*, 459 F.3d 827 (8th Cir. 2006), *cert. granted*, 127 S. Ct. 1144 (U.S. Jan. 19, 2007) (No. 06-562), *argued*, 2007 WL 1181894 (U.S. Apr. 23, 2007).

[10]     A petition for review of the Second Circuit's decision in *Consolidated Edison* is currently pending before the United States Supreme Court.  *See* 423 F.3d 90 (2d Cir. 2005), *petition for cert. filed,* 74 USLW 3600 (Apr. 14, 2006) (No. 05-1323).

(citing *Bedford Affiliates); PMC, Inc.,* 151 F.3d at 618; *but see Durham*

*Mfg. Co. v. Merriam Mfg. Co.,* 128 F. Supp. 2d 97, 101-03 (D. Conn.

2001) (in section 113(f) contribution action, claim under Connecticut state

statute specifically providing for reimbursement of environmental response

costs from other intentionally responsible parties is not subject to conflict

preemption).

In reviewing this matter, I am mindful of the Supreme Court's

command that "courts should not lightly infer" that a state provision is

preempted by a federal law. *Int'l Paper Co. v. Ouellette,* 479 U.S. 481,

491, 107 S. Ct. 805, 811 (1987); *see also Bedford Affiliates,* 156 F.3d at

426 (quoting *Int'l Paper,* 479 U.S. at 491, 107 S. Ct. at 811); *Durham Mfg.*

*Co.,* 128 F. Supp. 2d at 102 (citing *Bedford Affiliates,* 156 F.3d at 426).

To permit NYSEG in this action to by-pass the contribution scheme

established by Congress through resort to a state law governing

contribution, however, would severely undermine the Congressional intent

underlying CERCLA and would run counter to the principles outlined in the

relevant cases indicated above, including *Bedford Affiliates* and *In re The*

*Duplan Corp.* Accordingly, I find that plaintiff's section 1401 cause of

action is precluded by conflict preemption.[11]   *Major,* 2006 WL 2640622, at

---

[11]   In its motion, FirstEnergy also asserts that NYSEG is precluded from
pursuit of its claims in this action based upon a bankruptcy court discharge and

*25.

IV.   <u>SUMMARY AND ORDER</u>

Finding itself stripped, by virtue of evolving legal developments in the environmental arena, of the ability to seek contribution from FirstEnergy, as a PRP, toward the expenses associated with remediating the twenty-four hazardous waste MGP sites in issue, NYSEG now looks to New York's statutory contribution provision to fill the void and provide a basis for seeking recovery of portions of its expenses.  Examination of the federal and state law provisions which bear upon the issue of contribution in a case such as this, and their interplay, given the current state of Supreme Court and Second Circuit jurisprudence, requires analysis of a hopelessly confusing patchwork of caselaw which has proven difficult for this and many other courts to reconcile.  Having carefully reviewed CERCLA's remedial provisions, against the backdrop of only partially developed caselaw, I conclude that permitting resort to section 1401,

---

covenant not to sue, both dating back to 1945.  While it is doubtful that either of these pre-1980 events could serve to bar the pursuit of claims under CERCLA, *see, e.g., In re The Duplan Corp.,* 212 F. 3d at 151 (holding that for purposes of bankruptcy, the earliest date upon which a CERCLA cause of action could accrue was December 11, 1980, the effective date of CERCLA); *Buffalo Color Corp. v. AlliedSignal, Inc.,* 139 F. Supp. 2d 409, 419 (W.D.N.Y. 2001) (pre-CERCLA release or covenant not to sue covers CERCLA claims only if it is broad enough to encompass all potential environmental liabilities), the same is not necessarily true with regard to a contribution claim under N.Y. Civil Practice Law and Rules § 1401.  Because of my determination of FirstEnergy's motion on the merits, it is not necessary to address this portion of FirstEnergy's motion.

notwithstanding CERCLA's state law savings clauses, would do damage to the contribution and settlement scheme crafted by Congress when adopting CERCLA as well as the SARA amendments, thereby presenting a classic case of conflict preemption.  Accordingly, it is hereby

ORDERED, that defendant's motion for summary judgment be GRANTED, and that the clerk enter judgment DISMISSING the remaining claims set forth within plaintiff's amended complaint.


David E. Peebles
U.S. Magistrate Judge

Dated:      May 11, 2007
            Syracuse, NY