UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW YORK STATE ELECTRIC<br>& GAS CORPORATION,<br><br>             Plaintiff,<br><br>      v.<br><br>FIRSTENERGY CORPORATION,<br><br>             Defendant. | **SECOND AMENDED COMPLAINT**<br><br>Civil Action No. 3:03-CV-0438 (DEP) |

Plaintiff, New York State Electric & Gas Corporation ("NYSEG"), by and through its attorneys, Hinman, Howard & Kattell LLP and Dickstein Shapiro LLP, for its Second Amended Complaint against Defendant, FirstEnergy Corporation ("FirstEnergy"), alleges as follows:

## INTRODUCTION

1.  This is an action brought pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607(a) and the Declaratory Judgment Act, 28 U.S.C. § 2201.

2.  By this action, NYSEG seeks to recover response costs from FirstEnergy under Section 107(a) of CERCLA incurred by NYSEG solely in connection with releases and/or threatened releases of hazardous substances from the operations of former manufactured gas plants ("MGP") at certain sites situated in upstate New York, as further identified in Exhibit A to this Complaint.  NYSEG also seeks a declaration that FirstEnergy is liable under Section 107(a) of CERCLA to pay its equitable share of all future response costs that NYSEG incurs solely in connection with releases and/or threatened releases of hazardous substances from former MGP operations into the environment at and around the sites identified in Exhibit A to this Complaint.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over all claims arising under CERCLA, pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1331.

4. Venue is proper in this District pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to the claims occurred in this District, and the sites that are the subject of this action are situated in this District.

## PARTIES

5. Plaintiff NYSEG is a corporation organized under the laws of the State of New York with its principal place of business at Corporate Drive, Kirkwood Industrial Park, Binghamton, New York.

6. Defendant FirstEnergy is a corporation organized under the laws of the State of Ohio with its principal place of business at 76 South Main Street, Akron, Ohio. FirstEnergy is the corporate successor to the Associated Gas & Electric Company ("AGECO"), a corporation organized under the laws of the State of New York in 1906.

## FACTUAL BACKGROUND

7. NYSEG is the current or former owner of certain real property situated in upstate New York, where MGPs and/or holders for the storage of gas produced at MGPs formerly operated. The names and locations of these sites are more specifically identified in Exhibit A to the Complaint and collectively referred to hereafter as the "MGP Sites."

8. Upon information and belief, from 1906 until 1946, AGECO owned 100% of the stock of NYSEG or its predecessors, which was used by AGECO as a vehicle to acquire and consolidate all of the companies that owned and operated the MGP Sites.

9. During its ownership of NYSEG, AGECO was an owner and operator, as those terms are defined under CERCLA of the MGP Sites.

10. During its ownership of NYSEG, AGECO, through its use of AGECO-controlled "service companies," also exercised extensive control over the operations of the MGP Sites, including managing, directing, and conducting operations that caused and contributed to the release of pollutants into the environment.

11. During AGECO's ownership and operation of the MGP Sites, gas was manufactured at the MGP Sites primarily through processes that used coal, coal by-products, and oil.

12. Under the control and direction of AGECO, the MGPs produced gas for commercial and residential uses. Gas produced at the MGPs was sold to consumers in neighboring towns and villages.

13. During AGECO's ownership and operation of the MGP Sites, various tars and oils containing volatile organic compounds ("VOCs"), polycyclic aromatic hydrocarbons ("PAHs"), and heavy metals, were generated and released into the soil and groundwater of the MGP Sites from the operation of the former MGPs. These substances are considered "hazardous substances" pursuant to Section 101(14) of CERCLA, 42 U.S.C. § 9601(14).

14. The discharge, disposal, presence and potential or actual migration of hazardous substances at the MGP Sites constitute a "release" or "threatened release" pursuant to Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

15. The MGP Sites, including their surface and sub-surface soils and groundwater, are "facilities" within the meaning of section 101(9) of CERCLA, 42 U.S.C. § 9601(9).

16. The New York State Department of Environmental Conservation ("NYSDEC") has directed NYSEG to investigate and, if necessary, remediate contamination resulting from former MGP operations at the MGP Sites.

17. NYSEG has been, and continues to be, involved in the investigation, assessment, evaluation, and potential remediation of the MGP Sites. NYSEG has incurred response costs and damages in association with the investigation and remediation of the contamination of the MGP Sites caused by former MGP operations during the period of AGECO's control and operation.

18. To date, NYSEG has expended more than $75 million as a result of contamination from former MGP operations at the MGP Sites. NYSEG expects to incur many millions of dollars in additional costs to investigate and remediate contamination of the MGP Sites.

## RELATIONSHIP OF FIRSTENERGY TO NYSEG

19. Ithaca Gas Light Company ("Ithaca Gas Light") was incorporated under the laws of the State of New York in 1852.

20. On March 19, 1906, principals of Ithaca Gas Light incorporated the Associated Gas & Electric Company ("AGECO") as the parent holding company for fourteen power generating companies located in upstate New York and Ohio. The largest of the fourteen companies was Ithaca Gas Light.

21. From approximately 1906 until 1918, AGECO merged and consolidated several of its subsidiaries into Ithaca Gas Light. In 1918, AGECO merged Ithaca Gas Light with three of its other subsidiaries, the Homer & Cortland Gas Light Company, the Oneonta Light & Power Company, and the Norwich Gas & Electric Company. The consolidated company was named New York State Gas and Electric Corporation, renamed NYSEG in approximately 1929.

22. By 1929, AGECO was the principal holding company and ultimate parent of over 200 companies, known collectively as the Associated System, which provided power and

transportation services to 6200 communities in twenty-seven states, the Canadian Maritime Provinces, and the Philippines.

23. AGECO's assets consisted primarily of the stock of its single subsidiary Associated Gas & Electric Corporation ("AGECORP"). AGECORP's assets consisted primarily of the stock of its subsidiaries. AGECO created an additional level of holding companies under AGECORP, one of which was NY PA NJ Utilities Company ("NYPANJ"). NYPANJ's assets consisted primarily of the stock of its operating companies, which included NYSEG.

24. Governmental investigations beginning in the 1930's demonstrated that AGECO's officers and directors persistently disregarded the corporate form of AGECO and its subsidiaries, using the holding-company form as a cloak for their plunder of millions of dollars from the operating companies of the Associated System, including NYSEG. See, e.g., In re Metropolitan Edison Co., IT-5015, at 238 (Fed. Power Comm., 1940).

25. AGECO, through its subsidiaries and individual officers, actively and substantially exercised control over the affairs of the Associated System companies, including NYSEG, through the use of "management service companies," which were themselves organized, staffed, wholly-owned, and completely controlled by AGECO and its individual officers and directors. See, e.g., In re Metropolitan Edison Co., IT-5015 at 240.

26. Exemplifying AGECO's total control of the operations of the companies in the Associated System, Howard Hopson, one of AGECO's dominant officers, controlled the financial and accounting policies of AGECO and its subsidiaries. Hopson's employees kept the Associated System's accounting records. Entries in these records were changed and reinstated as Hopson directed. Hopson also controlled the subsidiaries' boards of directors, holding their undated signed resignations. Decisions were made by Hopson and his associates for their

1769373 v1; 11X9901!.DOC

2633028

personal financial benefit.  See, e.g., In re Associated Gas & Electric Co., 61 F. Supp. 11, 24 (S.D.N.Y. 1944), aff'd, 149 F.2d 996 (2d Cir).

27.  AGECO, through its subsidiaries and its individual officers and directors, caused companies of the Associated System, such as NYSEG, to transfer cash and other assets to AGECO and its other subsidiaries without providing assets, services, or other consideration of substantially equivalent value to the subsidiaries in return.  See, e.g., In re Metropolitan Edison Co., IT-5015, at 241.

28.  AGECO, its officers and directors, and their agents directly and substantially controlled, dominated, managed and supervised all aspects of the business activities of its subsidiaries, such as NYSEG, including but not limited to, physical operations, engineering, construction, purchasing, sales, servicing, accounting, and financing.  Subsidiaries were compelled to act at the direction of and in the interest of AGECO and its dominant officers, directors, and shareholders.  See, e.g., In re Metropolitan Edison Co., IT-5015, at 239-40.

29.  In 1944, the U.S. District Court for the Southern District of New York found, in connection with the reorganizations of AGECO and AGECORP, that AGECO and its officers and directors had controlled the boards of directors and the policies and management of AGECO subsidiaries through the Associated System, to the detriment of the subsidiaries, and in violation of the law.  See, e.g., In re Associated Gas & Electric Co., 61 F. Supp. 11.

30.  The district court concluded that all of the Associated System companies were the alter egos of Hopson and his associates.  See, e.g., In re Associated Gas & Electric Co., 61 F. Supp. at 26.

31.  In or about 1937, the Securities and Exchange Commission under the Public Utility Holding Company Act of 1935 began proceedings to divest AGECO of its monopoly over power generation in the eastern seaboard.

32. On January 10, 1940, AGECO and AGECORP filed voluntary petitions for their reorganization under Chapter X of the Bankruptcy Act.

33. Trustees were appointed to manage the affairs of AGECO and AGECORP. The Trustees, however, did not gain complete control over the affairs of AGECO, AGECORP and the operating companies of the Associated System until July 1942 when the Trustees ended the management and dominance by AGECO-controlled service companies over the operating companies, such as NYSEG.

34. On or about January 12, 1946, AGECORP formally was merged into AGECO; the consolidated surviving company was named General Public Utilities Corporation, a New York corporation. General Public Utilities Corporation became the successor to the assets and liabilities of AGECO, its subsidiaries and successors, and its officers and directors. Rochester Gas and Electric Corp. v. FirstEnergy Corp., No. 00-CV-6369(Fe) (W.D.N.Y., Aug. 8, 2008) (Decision and Order) at 72-78.

35. In December 1946, NYPANJ, formerly a wholly owned subsidiary of AGECO, was dissolved, and its assets, including NYSEG, were distributed to NYPANJ's parent, General Public Utilities Corporation.

36. In 1949, General Public Utilities Corporation was ordered to divest NYSEG.

37. Upon information and belief, in June 1969, General Public Utilities Corporation was merged into General Public Utilities Corporation, a Pennsylvania corporation.

38. In 1996, General Public Utilities Corporation changed its name to GPU, Inc.

39. In 2001, FirstEnergy and GPU, Inc. merged. FirstEnergy emerged as the surviving corporation.

40. FirstEnergy, through its merger with GPU, Inc., is the successor to the assets and liabilities of AGECO, its subsidiaries and successors, and its officers and directors.

1769373 v1; 11X9901!.DOC

2633028

Rochester Gas and Electric Corp. v. FirstEnergy Corp., No. 00-CV-6369(Fe) (W.D.N.Y., Aug. 8, 2008) (Decision and Order) at 72-78.

## FIRST CLAIM FOR RELIEF
## RECOVERY OF RESPONSE COSTS FOR
## OWNER/OPERATOR LIABILITY PURSUANT TO CERCLA

41. NYSEG incorporates by reference paragraphs 1 through 40 as if set forth fully herein.

42. NYSEG and FirstEnergy are "persons" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

43. Hazardous substances within the meaning of Section 101(14) of CERCLA, 42 U.S.C. § 9601(14), including VOCs and PAHs, were generated and released to the environment by AGECO at the MGP Sites on numerous occasions before 1946.

44. These hazardous substances have contaminated the soil and groundwater of the MGP Sites.

45. AGECO was an "owner" and/or "operator" of the MGP Sites within the meaning of Section 101(20)(A) of CERCLA, 42 U.S.C. § 9601(20)(A), at the time of "disposal" of hazardous substances from MGP operations at the MGP Sites as that term is defined by Section 101(29) of CERCLA, 42 U.S.C. § 9601(29).

46. Such "disposal" by AGECO constitutes a "release" or "threatened release" within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22).

47. NYSEG has incurred and will continue to incur substantial response costs and damages from releases or threatened releases of hazardous substances from MGP operations at the MGP Sites.

48. The costs incurred by NYSEG in investigating, assessing, and evaluating the release or threatened release of such hazardous substances from MGP operations at the MGP

Sites are necessary costs of "response" within the meaning of Sections 101(25) and 107(a)(4)(B) of CERCLA, 42 U.S.C. §§ 9601(25) and 9607(a)(4)(B).

49. The response costs incurred by NYSEG are and have been consistent with the National Contingency Plan, which is codified at 40 C.F.R. Part 300.

50. FirstEnergy, as the corporate successor to AGECO, AGECORP, and NYPANJ, succeeds to their liabilities as owners and/or operators of the MGP Sites during the time that hazardous substances were disposed of thereon. <u>Rochester Gas and Electric Corp. v. FirstEnergy Corp.</u>, No. 00-CV-6369(Fe) (W.D.N.Y., Aug. 8, 2008) (Decision and Order) at 72-78.

51. FirstEnergy is liable to NYSEG, under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a)(4)(B), in an allocation to be determined at trial, for necessary response costs and damages incurred by NYSEG to date with respect to MGP contamination at the MGP Sites, as well as for additional response costs by NYSEG through the date of entry of judgment in this action.

52. FirstEnergy is liable to NYSEG for interest on such response costs incurred and to be incurred by NYSEG in connection with MGP contamination at the MGP Sites, at the rate specified for interest on investments of the Hazardous Substance Superfund, pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

**SECOND CLAIM FOR RELIEF**
**DECLARATORY JUDGMENT FOR RESPONSE COSTS**

53. NYSEG incorporates by reference paragraphs 1 through 52 as if set forth fully herein.

54. There is an actual controversy between NYSEG and FirstEnergy as to their respective rights and duties concerning the investigation and remediation of the contamination by hazardous substances from MGP operations at and around the MGP Sites, and with respect to

9

any other presently unknown MGP sites where AGECO was an "owner" and/or an "operator" during the times that hazardous substances were disposed and "released" to the environment within the meaning of Sections 101 and 107(a)(4)(B) of CERCLA, 42 U.S.C. §§ 9601 and 9607(a)(4)(B).

55. NYSEG seeks a declaratory judgment pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), as well as 28 U.S.C. § 2201, as to the rights and duties of the parties and, in particular, a determination of FirstEnergy's liability to pay a percentage of the necessary costs of response and damages that will be incurred by NYSEG with respect to MGP contamination at the MGP Sites pursuant to Section 113(g)(2)(B) of CERCLA, 42 U.S.C. § 9613(g)(2)(B).

**WHEREFORE**, Plaintiff NYSEG requests that this Court:

A. On NYSEG's First Claim for Relief, enter judgment in favor of NYSEG and against FirstEnergy in an allocation to be determined at trial of all response costs and damages incurred by NYSEG with respect to the MGP Sites, together with interest, expenses and attorneys' fees.

B. On NYSEG's Second Claim for Relief, enter a declaratory judgment in favor of NYSEG that FirstEnergy must pay a percentage of additional response costs and damages to be incurred by NYSEG with respect to the alleged release or threat of release of hazardous substances at and around the MGP Sites, together with expenses and attorneys' fees, pursuant to Section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), as well as 28 U.S.C. § 2201.

C. On all Claims for Relief, grant NYSEG all other appropriate relief that the Court deems to be just and proper.

DATED: July 3, 2009

Respectfully submitted,

*[signature]*

James S. Gleason
Bar Roll No. 101789
HINMAN, HOWARD & KATTELL, LLP
700 Security Mutual Building
80 Exchange Street
P.O. Box 5250
Binghamton, New York   13902-5250
(607) 723-5341

Attorneys for Plaintiff New York State Electric
  & Gas Corporation

Of Counsel:

David L. Elkind
Andrew C. Cooper
Keisha A. Gary
DICKSTEIN SHAPIRO LLP
1825 Eye Street, N.W.
Washington, D.C.  20006
(202) 420-2200

11

# EXHIBIT A

## Names and Locations of Contaminated Sites

| Site or MGP Name | Site Location |
|---|---|
| Albion | Ingersoll Street, Albion, NY (Orleans County) |
| Auburn, Clark Street | Clark Street, Auburn, NY (Cayuga County) |
| Auburn, Green Street | Green, Water & Hulbert Streets, Auburn, NY (Cayuga County) |
| Auburn, McMaster Street (aka Water Street) | 23 McMaster Street, Auburn, NY (Cayuga County) |
| Corning | Intersection of Chestnut Street & West Tioga Avenue, Corning, NY (Steuben County) |
| Cortland/Homer | South Main Street (Route 11), Homer, NY (Cortland County) |
| Dansville | 50 Ossian Street, Dansville, NY (Livingston County) |
| Elmira, Madison Avenue | Madison Avenue, Elmira, NY (Chemung County) |
| Geneva, Border City | East Ninth Street, Waterloo, NY (Seneca County) |
| Geneva, Wadsworth St. | Wadsworth St., Geneva, NY (Ontario County) |
| Goshen | 502 – 508 West Main Street, Goshen, NY (Orange County) |
| Granville | 85 Main Street, Granville, NY (Washington County) |
| Ithaca, Cayuga Inlet | West Court Street, Ithaca, NY (Tompkins County) |
| Ithaca, Court Street | Corner of North Plain & Court Streets, Ithaca, NY (Tompkins County) |
| Ithaca, First Street | West end of Third Street at the confluence of Cayuga Inlet & Cascadello Creek, Ithaca, NY (Tompkins County) |
| Lockport, State Road | State Road, Lockport, NY (Niagara County) |
| Lockport, Transit St. | South Transit St., Lockport, NY (Niagara County) |
| Mechanicville, Central Avenue | North Central Avenue, Mechanicville, NY (Saratoga County) |
| Newark | Water Street, Newark, NY (Wayne County) |
| Norwich | 20 Birdsall Street, Norwich, NY (Chenango County) |
| Oneonta | Gas Avenue, Oneonta, NY (Otsego County) |
| Owego | East Main Street, Owego, NY (Tioga County) |
| Penn Yan, Water Street | SE Corner of Liberty & Water Streets, Penn Yan, NY |

| Site or MGP Name | Site Location |
|---|---|
|  | (Yates County) |
| Plattsburgh, Saranac Street | Saranac Street, Plattsburgh, NY (Clinton County) |

1769373 v1; 11X9901!.DOC

2633028