IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

NEW YORK STATE ELECTRIC & GAS
CORPORATION,

           Plaintiff,

                                          Civil Action No.
                                          3:03-CV-0438 (DEP)

     v.

FIRSTENERGY CORPORATION,

           Defendant.
_____

FIRSTENERGY CORPORATION,

           Third-Party Plaintiff,

     v.

I.D. BOOTH, INC.,

           Third-Party Defendant.


_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

DICKSTEIN SHAPIRO LLP          DAVID L. ELKIND, ESQ.
1825 Eye St., NW                      KEISHA A. GARY, ESQ.
Washington, D.C.  20037          GEOFFREY M. LONG, ESQ.
                                 KRISTIN C. DAVIS, ESQ.

HINMAN, HOWARD LAW FIRM          JAMES S. GLEASON, ESQ.
P.O. Box 5250
80 Exchange Street
700 Security Mutual Building
Binghamton, NY 13902-5250

FOR DEFENDANT/THIRD-
PARTY PLAINTIFF:

SAUL EWING LLP                   JOHN F. STOVIAK, ESQ.
1500 Market Street, 38th Floor   CATHLEEN M. DEVLIN, ESQ.
Philadelphia, PA 19102           CHRISTINA D. RIGGS, ESQ.
                                 AMY L. PICCOLA, ESQ.

COSTELLO, COONEY LAW FIRM        PAUL G. FERRARA, ESQ.
Salina Place
205 South Salina Street
4th Floor
Syracuse, NY 13202-1307

FOR THIRD-PARTY DEFENDANT
I.D. BOOTH, INC.:

DAVIDSON & O'MARA, P.C.          DONALD S. THOMSON, ESQ.
243 Lake Street
Elmira, NY 14901

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## AMENDED DECISION AND ORDER

Plaintiff New York State Electric & Gas Corporation ("NYSEG")

commenced this action against defendant FirstEnergy Corporation

("FirstEnergy") in April of 2003, asserting various claims including those

pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. § 9601 *et seq.,* seeking to recover a portion of the past and future costs of investigating and remediating several hazardous waste sites throughout Upstate New York formerly associated with manufactured gas plant ("MGP") operations of NYSEG and its predecessor utility companies. Defendant FirstEnergy, in turn, has interposed a counterclaim against NYSEG for contribution, essentially seeking equitable apportionment of the response costs incurred at the MGP sites, and additionally has asserted a third-party claim for contribution against I.D. Booth, Inc. ("I.D. Booth"), the current owner of portions of two of the sixteen MGP sites in issue.

On July 11, 2011, after conducting a non-jury trial, I issued a written decision addressing the claims in the action.  While noting in both its principal and reply briefs that other errors of law also taint that determination, FirstEnergy now seeks reconsideration of three findings contained within my decision.  For the reasons set forth below FirstEnergy's request for reconsideration is denied, and judgment in the action will now be entered.

I.    BACKGROUND

In my bench decision I found that FirstEnergy is liable for a portion of past and future necessary costs related to the clean-up of the sites in question finding, based upon a veil piercing theory, that its predecessor, the Associated Gas & Electric Company ("AGECO"), is properly regarded as having been an owner and operator of the sixteen sites in issue during all or portions of the period from 1922 through 1940.  Based upon that finding I allocated liability as between the two principal parties in the action in proportion to the amounts of manufactured gas produced at the facilities during their relevant periods of ownership and operation, concluding based upon the evidence adduced at trial that hazardous waste likely generated at those facilities can properly be assumed to have been roughly proportional to the quantities of gas produced.

Since the issuance of my post-trial opinion FirstEnergy has moved seeking reconsideration of portions of that decision, challenging three specific findings, arguing that 1) the court's findings regarding the application of the governing CERCLA statute of limitations in connection with the Plattsburgh Site are erroneous, in that they fail to recognize that the actions taken at that site during the 1980s were remedial in nature,

thereby triggering the applicable statute of limitations which would have run prior to commencement of this action and barred all of NYSEG's cost recovery claims with regard to that site; 2) the court inappropriately extended FirstEnergy's liability through the end of 1940 despite the filing of bankruptcy by AGECO in January of that year; and 3) the court unjustly allocated cleanup costs as between the parties without appreciating and giving effect to the distinction between owner and operator liability.

II.    <u>DISCUSSION</u>

A.    <u>Reconsideration Standard</u>

FirstEnergy's motion implicates Rule 60(b) of the Federal Rules of Civil Procedure, which provides in relevant part, that

> [o]n motion and just terms, the court may relieve a party...from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could  not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).[1]

In this district, reconsideration of an order entered by the court is appropriate upon a showing of "(1) an intervening change in controlling law, (2) the availability of new evidence not previously available, or (3) the need to correct a clear error of law or prevent manifest injustice." *In re C-TC 9th Ave. P'ship*, 182 B.R.1, 3 (N.D.N.Y. 1995) (McAvoy, C.J.); *see also Cayuga Indian Nation of New York v. Pataki*, 188 F. Supp. 2d 223, 244 (N.D.N.Y. 2002) (McCurn, S.J.) (citing *Sumner v. McCall*, 103 F. Supp. 2d 555, 558 (N.D.N.Y. 2000) (Kahn, J.)). Applications for reconsideration are also subject to an overarching "clearly erroneous" gauge. *Sumner*, 103 F. Supp. 2d at 558.

The benchmark for seeking reconsideration of a court's order has been described as "demanding[.]" *Id.* A motion for reconsideration is not a vehicle through which a losing party may raise arguments that could have been presented earlier but for neglect, nor is it a device "'intended to

---

[1]     FirstEnergy's motion purports to be brought pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, which governs motions to alter or amend judgments. *See* Fed. R. Civ. P. 59(e); *see also Ruscavage v. Zurratt*, 831 F. Supp. 417, 418 (E.D. Pa. 1993) (citing *Harsco Corp. V. Ziotnicke*, 779 F.2d 906, 909 (3d Cir. 1985)). Because judgment has not been entered in this case, however, the application is more appropriately regarded as implicating Rule 60(b) of the Federal Rules of Civil Procedure as well as Northern District of New York Local Rule 7.1(g), the latter of which details a procedure to govern motions for reconsideration without setting out a standard to be applied in deciding such applications.

give an unhappy litigant one additional chance to sway the judge.'" *Brown v. City of Oneonta, New York*, 858 F. Supp. 340, 342 (N.D.N.Y. 1994) (McAvoy, C.J.) (quoting *Durkin v. Taylor*, 444 F. Supp. 879, 889 (E.D.Va. 1977)).  To qualify for reconsideration, "[t]he moving party [must] point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F. 3d 255, 257 (2d Cir. 1995) (citations omitted).

>    B.    Statute of Limitations: The Plattsburgh Site

The circumstances surrounding the early response actions undertaken by NSYEG at the Plattsburgh–Saranac Street Site were exhaustively detailed in my initial decision and order, and need not be recounted in this decision.  *See* Decision and Order Dated 7/11/11 (Dkt. No. 354) at pp. 154-162.  To summarize, spurred by observation of coal tar seepage into the Saranac River, in 1975 NYSEG retained consultants and undertook an investigation into the migration of coal tar from the site to the river.  A report was generated in December 1979 – prior to the enactment CERCLA – outlining nine alternatives for addressing the issue. After settling on one of the nine proposals NYSEG consented to the entry

7

of an order by the New York State Department of Environmental Conservation ("DEC") in 1981, pursuant to which it agreed to "voluntarily undertake a remedial project that is acceptable to DEC."  Under the terms of that order NYSEG was directed to take certain specified measures to prevent coal tar from reaching the Saranac River from a tar lagoon located on the premises, and to remove coal tar from the river.

In my decision I concluded that while the project was uniformly referred to within NYSEG as being remedial in nature, that reference is contextual, the goal being to address the discharge of coal tar into the Saranac River and to clean up the contaminated areas of that body of water.  The evidence at trial reflected that neither the DEC nor NYSEG envisioned the project as encompassing a CERCLA-quality clean-up of the entire MGP site.  This conclusion is buttressed, *inter alia*, by the fact that the 1981 DEC consent order was not issued pursuant to CERCLA or parallel state provisions, but instead was entered under authority of a state law prohibiting certain discharges into state waters.  *See* N. Y. Env. Conserv. L. § 17-501.  I therefore concluded that the work performed was not the type of site-wide hazardous waste response envisioned under

CERCLA, and thus did not trigger the applicable statute of limitations.[2]

Relying heavily upon another district court's decision in *Yankee Gas Servs. Co. v. Utils., Inc.,* 616 F. Supp. 2d 229, 269 (D. Conn. 2009), First Energy passionately argues that my determination ignores the realities of the actions taken at Plattsburgh pursuant to the 1981 consent order as well as my own factual findings. *Yankee Gas,* however, presented a distinctly different situation, requiring the court in that action to designate what clearly was a hazardous waste clean-up effort conducted pursuant to CERCLA as either a remedial or a removal response. To inform that analysis the court identified four controlling factors which, FirstEnergy asserts, favor a finding of a CERCLA remedial action in this case.

FirstEnergy's argument ignores the realities of the 1981 consent order. That order did not require a CERCLA investigation and clean up of the Plattsburgh site. Indeed, while there admittedly was some testing performed in the area where the former MGP plant was located, the focus of the consent order was upon the nearby tar lagoon and the migration of tar from that point to the Saranac River. The thrust of the DEC's consent

---

[2]     As an alternative basis for my statute of limitations finding, I noted that if required to choose between regarding the work performed at the site as remedial in nature or instead a removal action, I would settle on the latter.

order and of NYSEG's efforts was to address the presence of coal tar in the Saranac River and prevent further coal tar migration to that body of water, and not to mandate a full-blown investigation and remediation of the entire Plattsburgh Site under CERCLA.  For that reason I concluded that the actions taken pursuant to the 1981 DEC consent order, as well as those prior to its issuance, did not constitute a remedial action under CERCLA sufficient to trigger the governing statute of limitations.  For the reasons set forth in my original decision, I find no basis to reconsider and alter that determination.

     C.    <u>Extension of Liability Through 1940</u>

On January 10, 1940 AGECO and its top holding company subsidiary, Associated Gas & Electric Corporation ("AGECORP"), filed for bankruptcy protection under Chapter X of the Bankruptcy Code then in existence.  In conjunction with that bankruptcy trustees were appointed for both companies, although unfortunately the record does not disclose – or at least neither NYSEG nor FirstEnergy has pointed to where among the hundreds of exhibits received in evidence this information can be found – precisely when those trustees were appointed.  At trial NYSEG argued that despite the filing of that bankruptcy and the subsequent appointment

of bankruptcy trustees for both AGECO and AGECORP, the domination of those corporations over their subsidiary operating utility companies extended for up to two more years, contending that it was not until 1942 that the trustees were fully able to gain control of the service contracts through which AGECO and AGECORP pillaged their subsidiaries.

In urging January 10, 1940 as a cutoff for its liability, FirstEnergy apparently contends that immediately upon filing of bankruptcy for AGECO and AGECORP the trustees, if they were even appointed on that date, were able to untangle the web woven over the years during which the AGECO empire flourished and halt the chronicled abuses associated with the pyramidal system.  In addition to defying logic, that contention lacks support from the record.  At trial Professor Jonathan Macey, NYSEG's corporate history expert, testified that based upon his extensive review of available historical documents, in his opinion the control and dominance of AGECO over its subsidiaries extended well into 1941 and, in his view, potentially beyond.  Based upon Professor Macey's testimony I chose to utilize December 31, 1940 as an appropriate liability cut-off date, and will adhere to that ruling.[3]

---

[3]    Unfortunately, while marked as an exhibit, the December 31, 1941 year-end annual report of the bankruptcy trustees for AGECO and AGECORP, which could

C.     Owner and Operator Allocation

FirstEnergy next argues that despite my finding of veil piercing and corresponding assignment of liability against it, as both an owner and operator, for hazardous discharges occurring between 1922 and the end of 1940, I erred by not separating out, for allocation purposes, owner and operator liability.

In assigning liability I followed the methodology employed by my learned colleague, United States Magistrate Judge Jonathan Feldman, in *Rochester Gas & Electric Corp. v. GPU, Inc.,* No. 00-CV-6369 (W.D.N.Y. 2008), ("RG&E"), a similar case also involving FirstEnergy.  In his decision Judge Feldman concluded that the most equitable means of apportioning liability under circumstances analogous to those involved in this case was to recognize that any party's equitable share should be primarily tied to that party's contribution of coal tar waste at the various MGP sites.  *See RG&E, slip op.* at 94-95.  Judge Feldman went on to find, based upon the parties' agreement and expert testimony, that the amount of hazardous waste deposited was approximately proportional to the volume of gas produced at the relevant times, and utilized that finding at his basis for

_____

well have shed considerable light on this issue, was not among the hundreds of exhibits offered and received in evidence at the trial.  *See* Exh. P-212.

apportioning both owner and operator liability as between the parties.  In doing so Judge Feldman does not appear to have distinguished between owner and operator liability.[4]

In support of its argument FirstEnergy places heavy reliance upon the Second Circuit's decision in *Commander Oil Corp. v. Barlow Equip. Corp.,* 215 F.3d 321 (2d Cir.), *cert. denied*, 531 U.S. 979, 121 S. Ct. 427 (2000), a case which examined whether a lessee can be considered as an owner for purposes of CERCLA.   Addressing that issue the court noted in passing the established rule in this circuit that owner and operator liability should generally be treated separately since they involved distinct concepts and potentially differing roles in relevant polluting activities. *Commander Oil Corp.*, 215 F.3d at 328 (citing *Schiavone v. Pearce*, 79 F.3d 248, 254 (2d Cir. 1996)).  With this I agree.  The underlying the facts in *Commander Oil Corp.*, however, are materially distinguishable, making the case not readily susceptible to direct application in this action.

In the years for which NYSEG has been assigned liability based upon hazardous waste disposition it or a predecessor utility operating

---

[4]      From the Second Circuit's decision, which affirmed the trial court's judgment in all respects, it does not appear that FirstEnergy raised the owner/operator allocation argument on appeal in that case.

company both owned and operated each of the MGP sites in question.

During the interval between 1922 and the end of 1940 AGECO,

FirstEnergy's predecessor, was deemed to have been both an owner and

operator of the sites in question by virtue of a veil piercing finding.  The

periods for which NYSEG and AGECO have been found responsible for

hazardous waste released at the MGP sites in issue cover the entire

periods of their active operation.  No proof was offered at trial of any other

hazardous waste releases on the properties, aside from natural migration

of existing coal tar.   Moreover, there was no proof offered at trial of any

actions taken by NYSEG, as an owner, following the culmination of gas

producing activities at the sites in question, from which one could

conclude that apportionment based upon relevant years of gas production

would lead to an inequitable and unjust result.  Given these facts, I find no

basis to differentiate between owner and operator liability for allocation

purposes. [5]

_____

[5]      In support of this argument FirstEnergy notes the court's decision results
in apportionment of response costs as between the two parties without consideration
of the fact that there may be other potentially responsible parties ("PRPs"), including
current site owners.  To the extent that in the end it may feel that it has overpaid for its
share of response costs, FirstEnergy is entitled to assert third party claims against
other PRPs pursuant to 42 U.S.C. § 9613(f), as it in fact has with regard to the current
owner of two of the MGP sites in question.

D.    Judgment to be Entered

In my July 11, 2011 decision I directed that the parties confer and present to the court a proposed judgment to be entered based upon my decision.  On August 1, 2011 the parties submitted counter-proposed judgments, together with letter briefs regarding those proposals.  Dkt. Nos. 355, 356.  The points of controversy centered upon the methodology to be used in calculating interest, including the dates of accrual, with FirstEnergy asserting that interest should accrue only from the filing of the most recent second amended complaint in which, a CERCLA section 107(a) cause of action was asserted for the first time, and FirstEnergy's request that the judgment include a provision for allowing it to share in decision-making for purposes of future costs since it will bear responsibility for a portion of those expenditures.

Under CERCLA an award of prejudgment interest is mandated in the circumstances now presented under both section 107(a) and section 113(f).  *Goodrich Corp. v. Town of Middlebury,* 311 F.3d 154, 177 (2d Cir. 2002) (citing *Bancamerican Comm. Corp. v. Mosher Steel,* 100 F.3d 792, 800 (10th Cir. 1996)), *cert. denied,* 593 U.S. 937, 123 S. Ct. 2577 (2003). Prejudgment interest accrues from the later of either a written demand for

payment or the date upon which the expenditure is incurred, and is calculated based upon prevailing Superfund rates established by the Environmental Protection Agency.  42 U.S.C. § 9607(a)(4); *see Matter of Bell Petroleum Servs., Inc.,* 3 F.3d 889, 908 (5th Cir. 1993); *Goodrich Corp.,* 311 F.3d at 177.   The filing of a complaint in an action such as this is sufficient to constitute a written demand for purposes of triggering accrual of prejudgment interest.  *Matter of Bell Petroleum Servs.,* 3 F.3d at 908.  I will therefore enter judgment authorizing recovery of prejudgment interest to accrue from the earlier of the date of filing of this action or when the expense was incurred.

Addressing the issue of decision-making sharing with respect to future costs, I have found no cases, nor has FirstEnergy cited any, standing for the proposition that a PRP sued and determined to have potential liability for future response costs to be incurred by another PRP should be given such control.  Declaratory judgments addressed to future costs are relatively routine in CERCLA litigation where complete investigation and remediation has not yet occurred at a site.  *See, e.g., RG&E, slip op. at* pp. 97-98; *Gussack Realty Co. v. Xerox Corp.,* 224 F.3d 85, 92 (2d Cir. 2000); *Goodrich Corp.,* 311 F.3d at 175; *United*

*States v. Davis*, 261 F.3d 1, 46, (1st Cir. 2001).  "[W]here, as here, a responsible party chooses to go to trial and future response costs are likely to be incurred, but the exact amount remains unknown, a judgment on proportional liability is an appropriate remedy."  *Tosco Corp. v. Koch Indus.,* 216 F.3d 886, 897 (10th Cir. 2000) (citing *Kelley v. E.I. DuPont de Nemours & Co.,* 17 F.3d 836, 844-45 (6th Cir. 1994)).  To the extent that FirstEnergy is concerned regarding NYSEG's discretion in connection with future costs, it has as a safeguard the requirement that to be recovered a response cost must be both necessary and consistent with the National Contingency Plan ("NCP").  I therefore decline FirstEnergy's request for inclusion of such a decision-sharing provision in the final judgment to be entered.

In response to FirstEnergy's objections regarding the methodology employed to compute interest, NYSEG has recalculated, breaking down the expenses monthly and applying the requisite prescribed rates.[6]  Dkt. No. 359.  Having reviewed NYSEG's submission and accompanying proposed judgment I find them to be consistent with this court's decision

---

[6]     In its initial proposed judgment NYSEG grouped expenses by year and applied interest as accruing from the first day of each year regardless of when, over the course of the year, the particular expense was incurred.

17

and the applicable legal principles, and therefore will direct in this order

that judgment be entered essentially in the form proferred by NYSEG, with

interest calculated through the date of entry.

V.    SUMMARY AND ORDER

For the reasons set forth above I find that FirstEnergy has failed to

meet its heavy burden of establishing a basis to reconsider my earlier

post-trial decision, and therefore will deny reconsideration in connection

with each fo the three arguments now raised by FirstEnergy.  Turning to

the judgment to be entered, I find that plaintiff's revised proposed

judgment and defendant's FirstEnergy's proposed judgment against third-

party defendant ID Booth, Inc., are consistent with the court's order and

controlling legal principles.  Accordingly, it is hereby

ORDERED as follows:

1)    Defendant FirstEnergy Corporation's motion for

reconsideration is DENIED.

2)    The clerk is directed to enter judgment in this action

substantially in the form of that attached as Exhibit B to NYSEG's August

5, 2011 submission (Dkt. No. 359), with interest brought forward to today's

date, and to include the following three additional provisions:

      a)     ID Booth, Inc., ("ID Booth") shall pay $160,089 to FirstEnergy, constituting the sum of I.D. Booth's equitable share of past response costs incurred through December 31, 2009 with respect to the Cortland-Homer Site.

      b)     I.D. Booth shall also pay $19,033 in prejudgment interest on past costs incurred through December 31, 2009, calculated through September 2, 2011 at the applicable Superfund interest rate for each fiscal year and accruing on the later date of the filing of this action or the date of expenditure.

      c)     FirstEnergy is entitled to a declaratory judgment that I.D. Booth is liable to pay FirstEnergy the amount of 6.72% of all response costs incurred by NYSEG at the Cortland-Homer Site after December 31, 2009, with prejudgment interest for those expenses incurred after that date but prior to the entry of judgment.


David E. Peebles
U.S. Magistrate Judge

Dated:      September 7, 2011
                  Syracuse, NY